USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/6/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DONALD RICHARDS,

                Plaintiff,

                07 Civ. 1790 (THK)

    v.

                **MEMORANDUM
                OPINION AND ORDER**

PATHMARK STORES, INC.

                Defendants.
------------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

    Plaintiff Donald Richards ("Richards" or "Plaintiff") brought this action against Pathmark Stores, Inc. ("Pathmark" or "Defendant"), asserting a claim of negligence. The case was originally filed in the Supreme Court of the State of New York, Bronx County, and was removed to this Court, pursuant to 28 U.S.C. 1446(a), on the basis of diversity jurisdiction.[1]

    Defendant Pathmark moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that Plaintiff has failed to offer any evidence showing that Defendant either created the condition that led to Plaintiff's accident, or had actual or constructive notice of the condition.

## BACKGROUND

    On February 4, 2004, Richards was walking on a sidewalk adjacent to a Pathmark supermarket at 410 West 207th Street, in

---

[1] The parties subsequently consented to trial before this Court, pursuant to 28 U.S.C. 636(c).

Manahattan, when he slipped and fell to the ground. (See Deposition of Donald Richards ("D. Richards Dep.") at 31-35, 53, attached as Exhibit ("Ex.") C to Defendant's Motion for Summary Judgment ("Def.'s Motion"); see also Defendant's Affidavit in Support of Motion for Summary Judgment ("Def.'s Aff."), ¶ 3.) Plaintiff claims that he was walking at a "regular pace" (D. Richards Dep., at 52) along a sidewalk that had been cleared of snow, such that the snow was piled on both sides of the sidewalk with a path down the middle wide enough for two people to walk through (see id. at 36).

Plaintiff suddenly found himself on the sidewalk and had no recollection of tripping over either an object or a hole in the ground. (See id. at 53.) Plaintiff claims that he slipped on a patch of "black ice" on the pathway, which he described as being "a dark part of the sidewalk" that he did not see. (See id. at 57.) According to Plaintiff, "[i]t doesn't appear to be ice, but it's like a dark part of the sidewalk, *and it doesn't look like anything is there.*" (Id.) (emphasis added). After standing up, Plaintiff slipped and fell to the ground again in a slightly different area on the sidewalk. (See id. at 63-64.) Plaintiff testified that it did not appear that any of the snow on either side of the pathway had melted and formed a frozen puddle. (See id. at 57.) He is unaware of how long the black ice had been there. (See id. at 60.) Although Plaintiff walked along the pathway regularly, he had not

2

noticed any black ice in the past. (Id.)

Plaintiff was helped to his feet by two men, neither of whom mentioned observing any black ice. (See id. at 61.) Plaintiff did not report the accident to Pathmark, but instead took a taxi to Jacobi Hospital. (See id. at 61-62.) While at the hospital, Plaintiff was examined and noticed that his knee was somewhat swollen. He was advised to stay home from work for a few days and to use crutches, and was prescribed pain medication. (See id. at 68-69, 73.)

Several weeks after he returned to work, Plaintiff's knee suddenly "gave out" and he fell to the floor. (See id. at 70.) Plaintiff did not file an accident report or a disability claim, but he returned to Jacobi Hospital, where doctors diagnosed a ruptured quadriceps tendon, and recommended that he have surgery. (See id. at 71-73; see also Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp."), at 4.) Plaintiff's surgery took place in mid-February 2004.

Following the surgery on his right knee, Plaintiff was required to wear a brace and continue to use crutches. (See Richards Dep., at 79.) About two weeks after the surgery, Plaintiff began a physical therapy program, which lasted for about four months, until approximately the end of June. (See id. at 80.) Plaintiff did not return to work until after his physical therapy

3

sessions were completed, but he continued to receive his wages during this period. (See id. at 82-83, 85.)

At some point in 2005, Plaintiff returned to Jacobi Hospital complaining of continuing pain in his knee. (See id. at 88.) The examining doctor told Plaintiff that another surgery would be required to remove the pins in his knee, in order to relieve the pain. Plaintiff chose not to undergo a second surgery. (Id.)

Plaintiff's expert witness, Denise P. Bekaert ("Bekaert"),[2] submitted a report stating that "Richards fell because Pathmark failed to keep the sidewalk clear of the hazardous condition of ice on the sidewalk." (Architect's Report ("Report"), attached as Ex. F to Def.'s Motion, at 1-2.) Bekaert based her report on (1) her inspection of the site of the accident, which took place on February 9, 2008 (more than four years after the accident), (2) her analysis of weather data from the period January 27 to February 4, 2004, and (3) her review of various documents, including Richards' deposition transcript. (See id. at 1-2.) Based on her analysis of the weather conditions prior to, and at the time of, the accident, Bekaert concludes that "it was a foreseeable event that the snow piles would begin to melt when the air temperature rose and the resulting water would flow downhill." (Id. at 3.) Further, Bekaert claims that "[i]t was foreseeable that a sheet of snowmelt resting on the concrete, which is likely to have been colder than the

---

[2] Bekaert is a registered architect in New York State.

4

ambient air temperature, would have refrozen forming a layer of ice." (Id.)

Bekaert testified at her deposition that the grade and condition of the sidewalk area in question was conducive to the formation of ice. (See Deposition of Denise Bekaert ("D. Bekaert Dep.") at 116-22, attached as Ex. E to Def.'s Motion.) However, Bekaert acknowledged that the condition of the sidewalk varied, and that she could not identify the specific area on which the accident occurred. (Id. at 120-22.)

## DISCUSSION

I. Summary Judgment Standards

    A. Federal Rule 56

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986); Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006); Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006). The burden of demonstrating the absence of any genuine dispute as to material facts rests upon the party seeking summary judgment. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970). Once a properly supported motion

for summary judgment has been made, the burden shifts to the non-moving party to make a sufficient showing to establish the essential elements of that party's case on which it bears the burden of proof at trial. Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003).

The non-moving party must put forth "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, courts are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986); Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004). Nevertheless, a party opposing a motion for summary judgment cannot rely on mere speculation or conjecture. See, e.g., Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.").

B. Local Rule 56.1

Under this Court's rules, a party moving for summary judgment must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule of the Southern District of New York ("L.R.") 56.1(a). A party

6

opposing the motion for summary judgment must include in its papers "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing . . . additional material facts as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1(b). Finally, all statements by the moving and non-moving party must be "followed by citation to evidence which would be admissible" under Federal Rule of Civil Procedure 56(e). L.R. 56.1(d).

II. <u>The Parties' Failure To Comply With Local Rule 56.1</u>

Defendant asserts that Plaintiff's failure to comply with Rule 56.1 – by providing a Rule 56.1 counter-statement supported by citations to admissible evidence – serves as a valid basis for granting summary judgment. While it is true that Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1 Stmt.") does not contain cites to admissible evidence, Defendant's Rule 56.1 Statement ("Def.'s 56.1 Stmt.") suffers from the same defect. Indeed, Defendant's 56.1 Statement includes no citations to the record whatsoever. Defendant did submit an additional affidavit that is properly cited, but Local Rule 56.1 clearly indicates that "[e]ach statement by the movant . . . must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." L.R. 56.1(d). In light of these mutual failings, Defendant's argument that it is entitled to summary judgment as a

result of Plaintiff's failure to comply with Rule 56.1 rings hollow.

The Court notes, however, that the circumstances surrounding Plaintiff's accident are largely undisputed. The question presented to the Court is whether Plaintiff has provided enough evidence to allow a jury to impose liability on Defendant for Plaintiff's fall and injury. Specifically, the Court must determine whether Plaintiff has provided enough evidence to create a genuine issue of material fact as to whether Defendant (1) created the condition that allegedly caused Plaintiff's accident, or (2) had constructive notice of the condition that caused the accident. If either of these questions is answered in the affirmative, Defendant's motion for summary judgment must be denied.

### III. Defendant's Liability for Plaintiff's Accident

As set forth below, there exists an established body of law, in analogous cases, that precludes summary judgment for Defendant in this case.

#### A. Creating the Dangerous Condition

##### 1. Legal Standard

Under New York law, "[i]n slip-and-fall cases involving snow and ice, a property owner . . . is not liable unless he or she created the defect, or had actual or constructive notice of its existence." Voss v. D&C Parking, 299 A.D.2d 346, 346, 749 N.Y.S.2d

76 (2d Dep't 2002).[3] To demonstrate entitlement to summary judgment, a defendant must first "establish as a matter of law that it maintained its premises in a reasonably safe condition [and] that it did not create the allegedly dangerous condition." Reinemann v. Stewart's Ice Cream Co. Inc., 238 A.D.2d 845, 846, 656 N.Y.S.2d 546 (3d Dep't 1997). An injured plaintiff's allegation that a defendant property owner created the condition as a result of snow removal procedures must be more than mere speculation, and must be supported by evidence. See Carricato v. Jefferson Valley Mall Ltd. P'ship, 299 A.D.2d 444, 444, 749 N.Y.S.2d 575 (2d Dep't 2002) (affirming a grant of summary judgment where a plaintiff's allegation that she slipped on a patch of black ice created by defendant was "speculative, unsupported by evidence"); Tsivitis v. Sivan Associates, LLC, 292 A.D.2d 594, 595, 741 N.Y.S.2d 545, 546 (2d Dep't 2002) (affirming a grant of summary judgment where no evidence was provided to support a plaintiff's contention that the defendant "caused the condition by negligent snow removal").

Conversely, when a plaintiff does provide evidence to support his claim that a defendant created the hazardous condition by improper or inadequate snow removal procedures, courts regularly deny summary judgment and allow the case to proceed to trial. See, e.g., Smith v. Cty. Of Orange, 51 A.D.3d 1006, 858 N.Y.S.2d 385 (2d

---

[3] The parties agree that New York law applies to this dispute.

9

Dep't 2008) (denying summary judgment because "plaintiff's opposition papers raised a triable issue of fact regarding whether the ice upon which plaintiff slipped was formed when snow piles created by the County's snow removal efforts melted and refroze"); Ricca v. Ahmad, 40 A.D.3d 728, 835 N.Y.S.2d 663 (2d Dep't 2007) (same); Vargas v. Central Parking Sys., 35 A.D.3d 255, 825 N.Y.S.2d 220 (1st Dep't 2006) (same); Knee v. Trump Village Const. Corp., 15 A.D.3d 545, 791 N.Y.S.2d 576 (2d Dep't 2005) (same); Prenderville v. Int'l Service Sys., Inc., 10 A.D.3d 334, 781 N.Y.S.2d 110 (1st Dep't 2004) ("[a]lthough conclusory allegations that a defendant's snow removal operations created or increased a dangerous snow-related hazard are insufficient to impose liability, plaintiffs have offered facts here which support their claim that the snow removal efforts of ISS and O&Y created a dangerous condition").

### 2. Application

As set forth above, the burden is first on Defendant to offer evidence that it maintained its premises in a reasonable manner and did not create the allegedly dangerous condition in question. In this regard, Defendant merely submitted a service contract it had with another company – Security Fence – for removal of snow from its premises. The contract provides for "automatic response" at any time of day or night where snow accumulation reaches three inches. (See Service Contract, attached as Ex. F to Def.'s Motion.) The contract also provides for "[s]alting on call at

request of store manager or maintenance department." (See id.) Although there is no dispute that snow was cleared from the sidewalk in front of Defendant's premises, Defendant does not submit an affidavit regarding when or how the snow was removed. Significantly, moreover, Defendant does not assert that it ever requested salt to be dispersed on the sidewalk in the days preceding Plaintiff's accident.

Plaintiff argues that Defendant's snow removal procedures, and its failure to request salting, actually caused the patch of black ice to develop. As support for this assertion, Plaintiff claims that, at the time of the accident, there were piles of snow on either side of the path on which he was walking. Plaintiff, through his expert witness, Bekaert, provides climatological data from the National Oceanic and Atmospheric Administration ("NOAA"), for Central Park, New York City, New York, indicating that there had been a significant amount of snowfall in the week preceding Plaintiff's accident on February 4, 2004. (See id.) This data, of which the Court can take judicial notice, also indicates that on February 3, 2004, the day before the accident, the temperature rose above freezing at 1:00 p.m. and stayed above freezing throughout the night. (See id.) At or about the time of the accident on February 4, 2004, the NOAA data indicates that the temperature was 38 degrees. (See id.) Bekaert states that the temperature of the concrete, on which the ice allegedly formed, "was likely to have

11

been colder than the ambient air temperature." (See id.) Although Plaintiff testified that he did not see runoff from the snow piles, Defendant does not specifically deny that there was ice on the sidewalk between the snow piles it created, and does not contend that it ever requested that salt be placed on the sidewalk in the days preceding the accident so as to prevent the runoff from the snow piles from freezing.

Plaintiff argues that these facts, which Defendant does not contest, raise a genuine issue of material fact as to whether Defendant's snow removal procedures created the dangerous condition - the black ice - which caused Plaintiff's injury. See, e.g., Prenderville, 781 N.Y.S.2d at 112 (reasonable inference that defendant, through its snow removal procedures, created the icy condition where plaintiff testified that, among other things, she slipped between two piles of snow along the sidewalk and did not see any sand or salt spread in the area).[4] The Court agrees that the evidence provided by Plaintiff is at least sufficient to raise

---

[4] The Prenderville court also denied summary judgment because given "defendants' silence with respect to the actual snow removal operations at issue, their alleged prima facie showing was patently insufficient." Id. at 113. Here, likewise, the extent of Defendant's submission regarding its snow removal efforts is its contract with the snow removal company. Because Defendant does not submit an affidavit stating that the operations were actually completed, or that it ever requested that sand or salt be spread on the sidewalk, as it was required to do under the contract, there is a question of fact as to whether Defendant has made a prima facie showing that it did not create or exacerbate a hazardous condition.

12

a triable issue of fact as to whether Defendant's snow removal procedures created the dangerous condition which caused Plaintiff's accident. For this reason alone, Defendant's motion for summary judgment must be denied.

The Court wishes to make clear that it reaches this result without granting much, if any, weight to Plaintiff's supposed expert witness, Denise Bekaert, a registered architect. Bekaert did not visit the site until four years after the accident. Accordingly, she had no personal knowledge of the size or location of the piles of snow on either side of the sidewalk, or the general condition of the sidewalk at the time of the accident. Her conclusions are, therefore, entitled to little weight. See, e.g., Richardson v. Rotterdam Square Mall, 289 A.D.2d 679, 680, 734 N.Y.S.2d 303 (3d Dep't 2001) (expert's opinion based on observations of the accident site two years after the incident was "of no evidentiary value"); Kruimer v. Nat. Cleaning Contractors, Inc., 256 A.D.2d 1, 680 N.Y.S.2d 511 (1st Dep't 1998) ("The expert's opinion should have been disregarded as conclusory inasmuch as it was based upon observations of the floor made over two years after the accident.").[5]

---

[5] In light of the fact that the Court does not need to rely on Bekaert's testimony in order to deny Defendant's motion for summary judgment, the Court will not delve into whether Bekaert's testimony is admissible under standards enunciated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993). That issue will, however, need to be addressed in advance of trial should Plaintiff designate Bekaert as an expert witness.

Even apart from Bekaert's report, however, Plaintiff has provided enough evidence to defeat Defendant's motion. As set forth above, the Court can take judicial notice of the climatological data from the NOAA regarding the snow accumulation and the temperatures at the time of the accident, and there appears to be no dispute between the parties that (1) there were snow piles on both sides of the paved path on which Plaintiff was walking, (2) Plaintiff slipped on ice between those two piles, and (3) Defendant did not ask that salt be placed on the path to prevent freezing of runoff from the snow piles. This evidence alone suffices to defeat summary judgment. Indeed, courts regularly deny summary judgment in similar circumstances without relying on, or even considering, expert testimony. See, e.g., Smith, 51 A.D.3d at 1006, 858 N.Y.S.2d at 385; Ricca, 40 A.D.3d at 728, 835 N.Y.S.2d at 663; Vargas, 35 A.D.3d at 255, 825 N.Y.S.2d at 220; Knee, 15 A.D.3d at 545, 791 N.Y.S.2d at 576; Prenderville, 10 A.D.3d at 334, 781 N.Y.S.2d at 110.

Plaintiff also argues that Defendant was negligent in that it violated Section 7-210 of the New York Administrative Code, which provides, in pertinent part:

- (a) It shall be the duty of the owner of any real property abutting any sidewalk . . . to maintain such sidewalk in a reasonably safe condition [and]

- (b) Notwithstanding any other provision of law, the owner of real property abutting any sidewalk . . . shall be liable for any injury

14

> . . . proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition. Failure to maintain such sidewalk in a reasonably safe condition shall include, . . . the negligent failure to remove snow, ice, dirt, or other material from the sidewalk.

For the reasons discussed, the evidence presented by Plaintiff raises a factual issue as to whether Defendant maintained the sidewalk in a reasonably safe condition. Any failure by Defendant to satisfy its affirmative duty under Section 7-210 would provide additional evidence of negligence, and another reason to deny Defendant's motion. See, e.g., Garcia-Martinez v. City of New York, 2008 WL 2582616, at *3 (N.Y. Sup. June 13, 2008) (denying motion for summary judgment; "[a]fter the enactment of NYCAC § 7-210, the duty to keep sidewalks clear of snow and ice was transferred to that of the abutting landowner"); Villaplana v. Kane Assocs. Family Ltd. P'ship, 851 N.Y.S.2d 75 (N.Y. Sup. 2007) ("It is well settled that a violation of the NYC Admin. Code is some evidence of negligence.").

\* \* \*

Although the Court need not proceed further, the Court concludes that Plaintiff did not adequately establish that Defendant had the requisite notice of the dangerous condition.

B.  Constructive Notice

   1.  Legal Standard

For a plaintiff to successfully assert that a defendant had

constructive notice of a dangerous condition, the "defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it." Wesolek v. Jumping Cow Enter., 51 A.D.3d 1376, 857 N.Y.S.2d 859, 861 (4th Dep't 2008) (citing Gordon v. American Museum of Natural History, 67 N.Y.2d 836, 837, 501 N.Y.S.2d 646 (1986)); Murphy v. 136 Northern Blvd. Assoc., 304 A.D.2d 540, 540, 757 N.Y.S.2d 582, 583 (2d Dep't 2003). Alternatively, "[a] plaintiff can establish constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed." Mazerbo v. Murphy, 2008 WL 2446067, at *1 (3d Dep't 2008) (citing Kivlan v. Dake Bros., 255 A.D.2d 782, 783, 680 N.Y.S.2d 293 (3d Dep't 1998)). Constructive notice cannot be established by a defendant's "general awareness that a dangerous condition may be present." See Piacquadio v. Recine Realty Corp., 84 N.Y.2d 967, 969, 622 N.Y.S.2d 493, 494 (1994); Voss, 299 A.D.2d at 347; see also Carricato, 299 A.D.2d at 445 ("[D]efendant's general awareness that water can turn to ice is legally insufficient to constitute constructive notice of the particular condition that caused the plaintiff to fall.").

2. Application

As set forth above, to show that Defendant had constructive notice of the dangerous condition, Plaintiff must provide evidence showing that the ice was (1) visible and apparent, and (2) existed

16

for a sufficient length of time before the accident for Defendant to discover and remedy it. Plaintiff's argument focuses entirely on the second of these two requirements. Plaintiff asserts that the ice formed as a result of either (1) melting snow from the piles on either side of the sidewalk, or (2) rain that fell the evening prior to the accident. Plaintiff suggests that because the snow piles had been present for several days, and because the rain had stopped falling the previous evening, Defendant had ample time to remove the ice.

Plaintiff's contention that the condition existed for a sufficient length of time to make it discoverable is based on pure conjecture. That the snow piles had been on the sides of the sidewalk for several days is irrelevant to how long the black ice was present on the sidewalk. In addition, Plaintiff fails to provide any evidence to show that the dangerous condition was "visible and apparent," as required by law. Plaintiff's failure in this regard is ultimately fatal because there is no evidence upon which to conclude that the alleged ice was visible. Indeed, Plaintiff's own deposition testimony suggests that the ice was, in fact, invisible. Plaintiff stated that black ice "doesn't appear to be ice, but it's like a dark part of the sidewalk, and it doesn't look like anything is there." (D. Richards Dep., at 57.)[6]

---

[6] Plaintiff's expert witness described black ice as being "clear and transparent such that it's not readily obvious to someone walking along because it is a thin film." (D. Bekaert

17

Thus, according to Plaintiff's own testimony, the hazardous condition was invisible, even to a person standing on top of it. Under these circumstances, Plaintiff cannot establish constructive notice.

Plaintiff also fails to demonstrate constructive notice by showing "evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed." Mazerbo v. Murphy, 2008 WL 2446067, at *1 (3d Dep't 2008). The only evidence in the record regarding the potential recurrence of the icy condition is from Plaintiff's deposition testimony, and is again detrimental to his case: Plaintiff stated that he had never seen black ice in that location on any day prior to the accident. (See D. Richards Dep., at 60.)

Thus, although Plaintiff does present enough evidence to raise a triable issue of fact regarding whether Defendant created the icy condition and violated Section 7-210 of the Administrative Code, Plaintiff has failed to provide any evidence from which a reasonable jury could conclude that Defendant had constructive notice of the alleged black ice.

**CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment is hereby denied.

---

Dep., at 113.)

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: August 6, 2008
       New York, New York